HUNTING RIDGE MOTOR SPORTS, Respondent, v COUNTY OF WESTCHESTER et al., Defendants, and C.S. GOODFRIEND, CO., INC., Appellant. [914 NYS2d 274]—

In an action, inter alia, to recover damages for injury to property, the defendant C. S. Goodfriend, Co., Inc., appeals from an order of the Supreme Court, Westchester County (DiBella, J.), entered December 30, 2009, which denied its motion for summary judgment dismissing the complaint insofar as asserted against it.

Ordered that the order is reversed, on the law, with costs, and the motion of the defendant C.S. Goodfriend Co., Inc., for summary judgment dismissing the complaint insofar as asserted against it is granted.

On April 15, 2007, as much as eight inches of rain fell in the Village of Port Chester. The rain caused widespread river and urban flooding. The premises occupied by the plaintiff, which abutted the Byram River, were infiltrated by approximately $2\frac{1}{2}$ feet of water when the river overflowed its banks, causing damage to the plaintiff's inventory of automobiles and other business property. The plaintiff commenced this action against, among others, the owner of the building, C.S. Goodfriend Co., Inc. (hereinafter the owner), to recover damages for injury to property and loss of business income as a result of the flooding in the premises. The plaintiff claimed that the flood waters entered through a six-inch hole in the wall of the building, as well as from a defective drain in the garage and gaps underneath two of the doorways. The plaintiff claimed that these points of entry were defective conditions for which the owner had notice and for which it had a duty to repair.

The owner moved for summary judgment, claiming that the hole in the wall was not a defective condition but actually was a port used as a safety precaution. The owner claimed, based upon the affidavit of its expert, that the building was purposely designed with the hole in the wall as a means of allowing water to enter the building during a severe flooding event. The engineer opined that permitting water to enter the building equalized the hydrostatic pressure to prevent the building from *imploding* or sustaining structural damage from outside water pressure. Thus, although, under the lease, the owner was obligated to make structural repairs, the affidavit of the expert was sufficient to show that the hole was not, in fact, a structural defect.

Further, the owner contends that, under the terms of the lease, it was only required to make structural repairs, and was not required to repair the allegedly defective drain and/or any gaps which may have been under the doors. The lease placed responsibility for any nonstructural maintenance and repair upon the tenant.

The owner established its prima facie entitlement to judgment as a matter of law by demonstrating that the hole was not a structural defect. In addition, the Supreme Court did not improvidently exercise its discretion in considering the expert affidavit submitted by the owner in support of the motion, since there was no evidence that the failure to disclose was intentional or willful, and there was no showing of prejudice to the plaintiff (*see Hernandez-Vega v Zwanger-Pesiri Radiology Group*, 39 AD3d 710, 711 [2007]; *Simpson v Tenore & Guglielmo*, 287 AD2d 613 [2001]).

In opposition, the plaintiff failed to submit evidence sufficient to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). The plaintiff failed to raise a triable issue of fact as to whether the six-inch hole constituted a structural defect. The affidavit submitted by the plaintiff's expert was neither probative nor reliable, as the expert claimed to be a professional geologist and, therefore, would not be qualified to give engineering opinions (*see Matott v Ward*, 48 NY2d 455, 459 [1979]; *Hofmann v Toys "R" Us, NY Ltd. Partnership*, 272 AD2d 296 [2000]).

Accordingly, the Supreme Court should have granted the owner's motion for summary judgment dismissing the complaint insofar as asserted against it. Rivera, J.P., Leventhal, Hall and Roman, JJ., concur.